IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ITT CORPORATION ) <br> and XYLEM, INC., ) <br> ) <br>    Plaintiffs/Counterclaim Defendants, ) <br> ) <br> v. ) <br> ) <br> XYLEM GROUP, LLC, ) <br> ) <br> ) <br>    Defendant/Counterclaim Plaintiff. ) | Civil Action <br><br> File No. 1:11-CV-3669-JEC |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION TO STRIKE THE REBUTTAL REPORTS OF
MR. GARDNER AND DR. JOHNSTON**

Contrary to Plaintiff and Counterclaim Defendant Xylem, Inc.'s contentions, the reports of Defendant Xylem Group, LLC's ("Xylem Group") experts, Arthur A. Gardner, Esq., and Dr. Wesley J. Johnston, are offered "solely to contradict or rebut evidence" provided by Xylem, Inc.'s experts and are proper rebuttal reports, timely disclosed pursuant to Federal Rule of Civil Procedure 26(a)(2)(D)(ii).

This Court adopted the parties' Joint Detailed Discovery Plan which provided that Expert Reports were to be served on opposing counsel on or before June 20, 2012, and any rebuttal reports on July 6, 2012. (Doc. [33]). Xylem, Inc. disclosed the reports of their experts, including those of Mr. Hampton and Dr.

1

Joachimsthaler, to Xylem Group on June 20, 2012.  After being served with Xylem, Inc.'s expert reports, Xylem Group retained rebuttal experts, including Mr. Gardner and Dr. Johnston to rebut the reports of Mr. Hampton and Dr. Joachimsthaler respectively.  Xylem Group timely served the rebuttal reports on Xylem, Inc. on July 6, 2012.

## DISCUSSION AND CITATION TO AUTHORITY

Mr. Gardner and Dr. Johnston's reports "contradict or rebut evidence on the same subject matter identified by" Mr. Hampton and Dr. Joachimsthaler's reports.  Id. at (a)(2)(D)(ii).  "The proper function of rebuttal evidence is to contradict, impeach or diffuse the impact of evidence offered by an adverse party." *Peals v. Terre Haute Police Department*, 535 F.3d 621, 630 (7th Cir. 2008).

In *TC Systems Inc. v. Town of Colonie, New York*, 213 F.Supp.2d 171 (N.D.N.Y. 2002), the court held that in order to determine the issue of whether the defendant's expert's testimony was improper rebuttal evidence, it would have to define "same subject matter" as used in Rule 26(a)(2)(D).  The Court reasoned:

> [The expert's] report may have broadened the "subject matter" by interjecting concepts meant to support his rebuttal.  These concepts, though could also be construed as an independent, fresh opinion on the matter.  Thus, if the Court broadly interprets "same subject matter," [the expert] was properly identified as a rebuttal expert witness.  If, on the other hand, the Court narrowly interprets "same subject matter," to restrict expert

> witnesses to not only the same subject matter but, in essence, the same methodology, [the expert] was not properly identified as an expert witness. As noted earlier, neither the Advisory Committee Notes nor case law provide any guidance on this issue. The Court is reluctant to narrowly construe the phrase "same subject matter" beyond its plain language. To accept Plaintiffs' contention would impose an additional restriction on parties that is not included in the Rules.

*Id.* at 180. Likewise here, narrowly construing the "subject matter" addressed by Mr. Hampton and Dr. Joachimsthaler "would impose [on Xylem Group] an additional restriction …. that is not included in the Rules." *Id.*

Xylem, Inc. argues that "courts do not read 'subject matter' broadly," citing *D'Andrea Bros. LLC v. United States*, No. 08-286C, 2012 WL 644010 (Feb. 10, 2012 Ct. Fed. Cl.), and noting that the court found that the "subject matter" of the report at issue was not damages, but was limited to the "precise calculations" contained in the report. (Pls.' Br. at 7). This was not the court's holding. Instead, the court found that, because plaintiff's rebuttal report included previously unasserted damage claims, plaintiff's rebuttal report *could not* be responsive to the defendant's expert report. Thus, the court did not narrowly construe "subject matter" but instead limited it to those claims previously asserted in the litigation. Xylem, Inc. argues that if "subject matter" is interpreted too broadly it will lose meaning; it also will lose meaning, however, if interpreted too narrowly.

3

Accordingly, courts should give a fair interpretation of its meaning, excluding wholly new claims as in *D'Andrea Bros.*, but allowing rebuttal evidence to encompass new "methodology" as in *TC Systems*.

Xylem Group does not assert any new claim in its rebuttal reports. It merely responds to Mr. Hampton and Dr. Joachimsthaler's analysis and opinion of Xylem Group's trade channels, customer base, and the propriety of ITT's 'clearance' of the Xylem name. Plaintiffs argue that Xylem Group is using rebuttal reports to compensate for some failure to present evidence in its case-in-chief, but Xylem Group was not required to present expert testimony to establish that Xylem, Inc. and Xylem Group use the same trade channels and have the same consumer base, or that Xylem, Inc.'s clearance of the Xylem name included many objective red flags including a recommendation from outside counsel to ITT to "consider a different mark that does not pose as significant of a risk in terms of risk of rejection and infringement risk." (4/27/11 Trademark Search Report by Jason Schmitz, Esq., Baker & McKenzie, Exhibit 28 to the June 25, 2012, Deposition of ITT In-house IP Counsel, Peter VanWinkle, Esq., attached hereto as Exhibit A). Xylem Group chose to present expert testimony on these matters only to rebut Xylem, Inc.'s experts' erroneous analysis and conclusions.

Further, expert disclosure rules are intended to prevent undue surprise, not to require parties to anticipate their adversary's every argument. For example, until June 20, 2012, Xylem Group was unaware that Xylem, Inc. would make the argument that it's clearance of the Xylem name was "textbook" and that Plaintiffs would claim that "there is **no indication** that ITT believed there would be any marketplace confusion upon its adoption of the name and mark XYLEM..." (Hampton ¶¶ 22-23) (emphasis added). Indeed, the documents Xylem, Inc. produced in discovery demonstrate that Xylem, Inc.'s outside trademark clearance counsel warned that

> The registration for XYLEM owned by Xylem Group, LLC and the registration for XILEMA owned by Novedades Agricolas, S.A. would both pose serious risks in terms of rejection for registration and infringement risks because of the visual similarities of the marks and the use of the marks in connection with Class 11 water distribution products. Although the consumer products fixtures sold by Xylem Group can be distinguished, the fact that Xylem Group owns an identical mark for Class 11 water distribution products will pose a serious issue to overcome in terms of obtaining a registration at the U.S. Trademark Office.
>
> Suggestions:  It is advisable to consider a different mark that does not pose as significant of a risk in terms of risk of rejection and an infringement risk.

(Exhibit A, 4/27/11 Trademark Search Report by Jason Schmitz, Esq., Baker & McKenzie, Exhibit 28 to the June 25, 2012, Deposition of ITT In-house counsel,

5

Peter VanWinkle, Esq.).  It is the Plaintiffs' presentation of new arguments regarding Xylem Group's trade channels, customer base, and the propriety of ITT's 'clearance' of the Xylem name that necessitated Defendant's retention of new experts to rebut and contradict these new arguments.[1]

Xylem, Inc. also asserts that it is improper for rebuttal reports to contain "new arguments" relating to any issue on which that party bears the burden of proof, citing two distinguishable, unpublished district court cases.  (Pls. Br. at 5) (citing *STS Software Sys., Ltd. v. Witness Sys.*, Inc., No. 1:04-CV-2111 RWS, 2008

---

[1] Plaintiffs' reference in the fact section of their Brief to pre-motion consultations is taken out of context and is not helpful to the Court.  More importantly, Plaintiffs omit that in the course of those discussions the parties agreed that, notwithstanding any decision made on the instant dispute, they nevertheless would be compelled to move jointly to extend the discovery period as unanticipated circumstances have resulted wherein certain ITT/Xylem Inc. witnesses are unavailable to be deposed during the month of July.  This is relevant should the Court find any potential prejudice pursuant to Rule 37, as it could be cured through the use of sur-rebuttal reports during the anticipated extended discovery period (the depositions of Mr. Gardner and Dr. Johnston are already scheduled to be taken on July 30 and 31). *See Discrete Wireless, Inc. v. Coleman Technologies, Inc.*, 1:06-CV-00554-GET, 2008 WL 6898503 (N.D. Ga. June 26, 2008) (denying motion to strike finding an absence of prejudice where defendant had the opportunity to depose plaintiff's expert witness following submission of a rebuttal report) (attached hereto as Exhibit B); *STS Software Sys., Ltd. v. Witness Sys.*, Inc., No. 1:04-CV-2111 RWS, 2008 WL 660325 at *2 (N.D. Ga. Mar. 6, 2008) (noting that plaintiffs would suffer prejudice as their experts did not have an opportunity to respond to the new opinions submitted in Defendant's rebuttal reports, and as "Defendant has not taken any steps to ameliorate the prejudice to Plaintiffs as a result of the submission of these new opinions.") (attached hereto as Exhibit C).

WL 660325 at *2 (N.D. Ga. Mar. 6, 2008) (a patent case which is governed by the Local Patent Rules which make supplemental reports presumptively prejudicial, and where an initial expert later provided a 'rebuttal' report stating new "substantive explanation and basis for opinions on obviousness" which he failed to include in his initial report), and *Baldwin Graphic Sys., Inc. v. Seibert, Inc.*, No. 03-C-7713, 2005 WL 1300763 at *2 (N.D. Ill. Feb. 22, 2005) (also a patent case where defendant asserted for the first time in a rebuttal report that seven additional claims of a patent were invalid for obviousness)).  While it is true that parties are prohibited from sandbagging the opposing counsel in rebuttal with new claims or theories of the case (as in *D'Andrea Bros.*), at least two federal Circuit Courts of Appeal have held that rebuttal on issues addressed by a party's case-in-chief are proper where they are responding to new arguments presented by an opposing expert. *103 Investors I, L.P. v. Square D. Co.*, 372 F.3d 1213, 1217-18 (10th Cir. 2004) (holding that it was an abuse of discretion to exclude the rebuttal report of a new expert who opined on a topic that was the subject of the plaintiffs' case-in-chief and on which plaintiff had already served expert reports, finding that the new report was proper rebuttal because it opined "more directly" on the issue in response to the defendant's expert report), *United States v. Luschen*, 614 F.2d 1164, 1170 (8th Cir. 1980) ("the fact that testimony would have been more proper for the

case-in-chief does not preclude the testimony if it is proper both in the case-in-chief and in rebuttal."), *see also Donell v. Fid. Nat. Title Agency of Nevada*, 2:07-CV-00001-KJD, 2012 WL 170990 (D. Nev. Jan. 20, 2012) (same) (attached hereto as Exhibit D), *Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 326 (S.D.N.Y. 2009) (rebuttal report was admissible where new methodologies used by expert in rebuttal report were for the purpose of rebutting or critiquing the opinions of Defendants' expert).

  A. <u>Mr. Gardner's Report is a Proper Rebuttal of Mr. Hampton's Report</u>

  The two sections of Mr. Gardner's report to which Xylem, Inc. objects address the facts and legal opinions available to and willfully ignored by Xylem, Inc. (through its predecessor, ITT) when it decided to adopt the Xylem name. Xylem Inc. argues these sections go beyond the scope of Mr. Hampton's report. In fact, Mr. Gardner's discussion and analysis of these facts directly relates to and contradicts Mr. Hampton's opinion that ITT did everything it should have done in an "almost textbook example of the proper way for a company to clear and adopt a name" for its spin-off company (Xylem, Inc.). (Hampton Report ¶ 22).

  Mr. Hampton's recitation of the facts and resulting opinions relevant to the instant motion include that: ITT was aware of Xylem Group's federal trademark registration and use of the mark "Xylem" in the United States; that such

registration and use was originally flagged as presenting a "high difficulty" to ITT obtaining a trademark for the same name in the United States; that the name Xylem was otherwise qualified as presenting a "low/medium difficulty" on a *global* basis; that this information and analysis was presented to ITT management for use in choosing a final name for the spin-off of the water company; and that despite this knowledge, ITT adopted the name "Xylem," including in the United States. (Hampton Report ¶¶ 16, 18, 19, 20, 21).

Xylem, Inc. argues that Mr. Hampton's report "discuss[es] only the objective circumstances surrounding ITT's process[, and does not] purport to opine on ITT's state of mind…" (Pls.' Br. at 3). This is not the case. Mr. Hampton opines on ITT's state of mind, concluding,

> it is my opinion that ITT adopted the name and mark XYLEM for its water technology business after appropriately and reasonably taking into account all of the relevant facts. **There is no indication that ITT believed there would be any marketplace confusion upon its adoption of the name and mark XYLEM or that it disregarded Xylem Group's trademark rights**.

(*Id.* at ¶ 23) (emphasis added).

Mr. Gardner's report contradicts and rebuts evidence on the same subject matter, "ITT['s] belie[f]" regarding marketplace confusion and Xylem Group's trademark rights. Mr. Gardner concludes that ITT willfully ignored the clear opinion of its outside counsel that adoption of the mark "Xylem" would likely

infringe on Xylem Group's rights and ITT would likely be barred from registering the mark.  (Gardner ¶¶ 1-8, pp. 11-13).  In reaching this opinion, Mr. Gardner walks through a parallel description of the information available and "process" by which ITT decided to adopt the "Xylem" mark.  Mr. Gardner finds particularly relevant the adverse opinion of ITT's outside counsel concluding Xylem Group's federal trademark registration would prevent ITT's registration of "Xylem" in the United States, ITT's adoption of the mark could be infringement, and that ITT should pick a different mark.  (Gardner ¶¶ 1, 4, 5).  Further, Mr. Gardner relies on the absence of a retraction of this opinion, or the presence of a contrary opinion by outside counsel in the United States.  (Gardner, ¶¶ 1-8).  Mr. Gardner concludes that ITT did not engage in a "textbook" case of clearing the mark nor act with the informed belief that "there would be [no] marketplace confusion upon its adoption of the name and mark XYLEM." (Hampton ¶¶ 22-23).  Instead, Mr. Gardner concludes that ITT willfully disregarded Xylem Group's trademark rights, failed adequately to determine the likelihood of confusion in the marketplace, and consequently can be found to have willfully infringed on Xylem Group's trademark rights.  Accordingly, as Mr. Gardner's rebuttal report directly responds to, rebuts, and contradicts Mr. Hampton's report, Xylem, Inc.'s Motion to Strike Mr. Gardner's report should be denied.

B.  Dr. Johnston's Report is a Proper Rebuttal of Dr. Joachimsthaler's Report

Similarly, Dr. Johnston's report is direct and proper rebuttal of Dr. Joachimsthaler's report. Instead of a "belated attempt to bolster Mr. Schlicher's opinions," as Xylem, Inc. contends, Dr. Johnston's report: directly rebuts Dr. Joachimsthaler's reasoning and conclusions, directly cites Dr. Joachimsthaler's report throughout; and limits itself to the subject matter addressed in Dr. Joachimsthaler's report. It cannot be barred simply because it could have been presented in Xylem Group's case-in-chief.

Both Dr. Johnston and Dr. Joachimsthaler are experts in the field of business buying behavior and the associated use of brands. Within that field, there are at least two competing methodologies used to explain how organizational buyers make product choice decisions. Dr. Joachimsthaler applies the "buying center methodology" in his report. In contrast, Dr. Johnston applies the "brand-driven methodology," which is based on recent developments within the field. Dr. Johnston discusses the differences in the two methodologies and explains that the "buying center methodology" is outdated and the newer, "brand-driven methodology" is in line with modern buying behavior. (Johnston, p. 3).

Xylem, Inc. argues that Dr. Johnston's report goes beyond the scope of the subject matter of Dr. Joachimsthaler's report, which "focuses entirely on facts

11

relating to Xylem, Inc.'s use of trademarks." (Pls.' Br. at 3) (emphasis omitted). This is not an accurate summary of the report. Xylem, Inc. tries to limit the scope of Dr. Joachimsthaler's report by arguing that, while it is "relevant to the likelihood of confusion between the parties," it does not address that confusion and is only "indirectly" relevant. (Pls.' Br. at 11). However, the report by implication is distinguishing between Xylem, Inc. and Xylem Group's structure, processes, and use of the Xylem mark. If the report were not making that distinction, the report would not be relevant. Further, if the report were not a comparison between the two companies, then Mr. Joachimsthaler has no basis to conclude: "Due to the complexity of the organizational buying process, the influence of Xylem's product brands in the purchase decision, and the value found in Xylem's product brands, buying centers are unlikely to confuse Xylem, Inc. branded products with Xylem Group products." (Joachimsthaler ¶10(f)). To do so, Dr. Joachimsthaler compared Xylem Inc. and Xylem Group's branded products. (Deposition of Dr. Erich Joachimsthaler, July 17, 2012, 206:24-207:09, attached hereto as Exhibit E).

As the interplay between the reports and differing methodologies is complex, attached hereto is a summary table detailing the points made in Dr. Joachimsthaler's report and the corresponding rebutting points from Dr. Johnston's report. (Summary Table, attached hereto as Exhibit F). As set forth more fully in

the attached summary chart, Dr. Joachimsthaler's report explains <u>part</u> of Xylem, Inc.'s product development, channels of trade, and implications on the use of brands therein, and reaches the conclusion that there is no product overlap with Xylem Group, no overlap of trade channels or customers with Xylem Group, and that, due to the process by which Xylem, Inc.'s customers gather information, there is no likelihood of confusion caused by Xylem, Inc.'s junior use of the mark.  Dr. Johnston's report addresses these same elements by discussing a <u>different</u> part of Xylem, Inc's product development, channels of trade, and the resulting implications of brands therein.  By applying a different methodology, and considering a broader scope of evidence, Dr. Johnston concludes that both companies are business to business (B2B), with similar or related products, that share some trade channels and customers, and that these factors are likely to lead to confusion between the two companies.  Specifically, Dr. Johnston considers evidence of <u>actual</u> confusion of the companies's shared customers to support his rebuttal of Dr. Joachimsthaler's finding that confusion is unlikely.

      The fact that Dr. Johnston explains his reasoning by applying the brand-driven methodology to the facts of the case does not make his report improper rebuttal.  To the contrary, rebuttal expert reports may introduce new methods of analysis, and additional data if they are presented for the purpose of contradicting

or rebutting evidence on the same subject matter. *Deseret Mgmt. Corp. v. United States*, 97 Fed. Cl. 272, 274 (Fed. Cl. 2011), *TC Systems Inc.*, 213 F.Supp.2d at 180, *Kirola C. City and County of San Francisco*, No. C-07-3658 SBA (EMC), 2010 WL 373817 (N.D. Ca. Jan. 29, 2010) ("As a general matter, courts have permitted additional data to be used in a rebuttal report so long as it is of the same subject matter.") (attached hereto as Exhibit G).  Dr. Johnston's application of the brand-driven methodology to rebut and contradict the conclusions Dr. Joachimsthaler reaches through application of the buying center methodology is proper rebuttal, and Xylem, Inc.'s Motion to Strike Dr. Johnston's report should be denied

## CONCLUSION

As Mr. Gardner and Dr. Johnston's rebuttal reports are offered "solely to contradict or rebut evidence" provided by Xylem, Inc.'s experts, and as Mr. Gardner and Dr. Johnston's reports were timely disclosed pursuant to Federal Rule of Civil Procedure 26(a)(2)(D)(ii), Xylem Group respectfully requests that this Court deny Xylem, Inc.'s Motion to Strike.

Respectfully submitted this 23rd day of July, 2012.

[Signatures appear on the following page]

FELLOWS LABRIOLA LLP

s/Stephen T. LaBriola
Stephen T. LaBriola
Georgia Bar No. 431026
Christina M. Baugh
Georgia Bar No. 241880
Suite 2300, South Tower 225 Peachtree Street, N.E., Atlanta, Georgia 30303
(404) 586-9200
slabriola@fellab.com, cbaugh@fellab.com

Gerard F. Dunne (admitted *pro hac vice*)
Joseph A. Dunne (admitted *pro hac vice*)
Law Office of Gerard F. Dunne, PC
41 Union Square West, Suite 1125
New York, New York 10003
(212) 645 2410
jerry.dunne@dunnelaw.net, joe.dunne@dunnelaw.net
Attorneys for Defendant and Counterclaim Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that this day I electronically filed the foregoing with the clerk's office CM/ECF system which will send email notification to the following counsel of record:

Gregory Scott Brow, Esq.
gbrow@mckennalong.com
MCKENNA LONG & ALDRIDGE -GA
303 Peachtree Street, N.E.
One Peachtree Center, Suite 5300
Atlanta, GA 30308

Emmet T. Flood, Esq.
eflood@wc.com
Robert J. Shaughnessy, Esq.
bshaughnessy@wc.com
Sara F. Teich, Esq.
steich@wc.com
WILLIAMS & CONNOLLY LLP

This 23rd day of July, 2012.

    s/Stephen T. LaBriola
    Stephen T. LaBriola